CHAD A. READLER
Acting Assistant Attorney General
WILLIAM C. PEACHEY
Director, District Court Section
TIMOTHY M. BELSAN
Senior Litigation Counsel
TROY D. LIGGETT
Trial Attorney
District Court Section
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 532-4765; (202) 305-7000 (fax)
troy.liggett@usdoj.gov
JOSEPH F. CARILLI, JR.
Trial Attorney
JULIAN M. KURZ
Trial Attorney

*Counsel for Respondents*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAK KIM CHHOEUN, et al.,<br><br>           Petitioners,<br><br>     v.<br><br>DAVID MARIN, Field Office Director, Los Angeles Field Office, United States Immigration and Customs Enforcement; et al.,<br><br>           Respondents. | Case No. 8:17-cv-01898-CJC (GJSx)<br><br>**RESPONDENTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS AND RETURN ON HABEAS PETITION**<br><br>Motion Date:  March 26, 2018<br>Time:  1:30 p.m.<br>Courtroom 9B<br>Honorable Judge Cormac J. Carney |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................. 1

ARGUMENT ...................................................................................... 1

    A. The Court Lacks Jurisdiction Over Count Five ...................................... 1

    B. The Court Lacks Jurisdiction Over Counts One and Two ...................... 5

    C. Section 1231(h) Bars Counts One and Two ........................................... 6

    D. Count One Does Not State a Valid APA Claim, and the Habeas
       Component of Count One Should Be Rejected Too. ............................. 7

    E. Count Three Should Be Denied ............................................................ 9

    F. Count Four Should Be Denied ............................................................ 10

CONCLUSION ................................................................................. 12

# TABLE OF AUTHORITIES

*Boumediene v. Bush*,
    553 U.S. 723 (2008) ................................................................. 3

*Chhoeun v. Marin*,
    2018 WL 566821 (C.D. Cal. Jan. 25, 2018) ................................. 1

*Flores v. Johnson,*
    No. 15-cvCV-7167, 2015 WL 12656240 (C.D. Cal. Sept. 30, 2015) .............. 2

*Garcia v. Holder*,
    788 F. Supp. 2d 326 (S.D.N.Y. 2011) ..................................... 4, 5

*J.E.F.M. v. Lynch*,
    837 F.3d 1026 (9th Cir. 2016) ................................................ 2

*Jay v. Boyd*,
    351 U.S. 345 (1956) .............................................................. 11

*Jennings v. Rodriugez*,
    138 S. Ct. 830 (2018)........................................................ 1, 2, 5, 6

*Khan v. Att'y Gen.*,
    691 F.3d 488 (3d Cir. 2012) ............................................... 4, 5

*Ky. Dep't of Corrs. v. Thompson*,
    490 U.S. 454 (1989) .............................................................. 10

*Olim v. Wakinekona*,
    461 U.S. 238 (1983) .............................................................. 10

*Puri v. Gonzales*,
    464 F.3d 1038 (9th Cir. 2006) ................................................. 3

*Singh v. Mukasey*,
    533 F.3d 1103 (9th Cir. 2008) ................................................ 33

*Telecomms. Research & Action Ctr. v. F.C.C.*,
    750 F.2d 70 (D.C. Cir. 1984) ............................................ 3, 4, 5

*Town of Castle Rock, Colo. v. Gonzales*,
    545 U.S. 748 (2005) .............................................................. 10

*United States v. Villasenor-Martinez,*
   25 F. App'x 557 (9th Cir. 2001) ......................................................... 11

*United States v. Hovsepian,*
   359 F.3d 1144 (9th Cir. 2004) ............................................................ 1

*United States ex rel. Kaloudis v. Shaughnessy,*
   180 F.2d 489 (2d Cir. 1950) ............................................................... 11

*Univ. of Tex. v. Camenisch,*
   451 U.S. 390 (1981) ........................................................................... 1

*Xiaoyuan Ma v. Holder,*
   860 F. Supp. 2d 1048 (N.D. Cal. 2012) ............................................. 2

*Zadvydas v. Davis,*
   533 U.S. 678 (2001) ........................................................................ 6, 9

**STATUTES**

5 U.S.C. § 704 ...................................................................................... 7

8 U.S.C. § 1103 ................................................................................... 3

8 U.S.C. § 1231(a) .............................................................................. 9

8 U.S.C. § 1231(a)(6) ..................................................................... 7, 10

8 U.S.C. § 1231(h) .......................................................................... 1, 6

8 U.S.C § 1252 ................................................................................ 1, 2

8 U.S.C § 1252(b)(9) ...................................................................... 2, 5

8 U.S.C § 1252(g) .............................................................................. 2

28 U.S.C. § 2241 ................................................................................. 6

28 U.S.C. § 2243 ................................................................................. 8

## REGULATIONS

8 C.F.R. § 241.13 ................................................................................................. 7

8 C.F.R. § 241.13(i) ........................................................................................... 11

8 C.F.R. § 241.13(i)(2) ................................................................................. 8, 9, 12

8 C.F.R. § 1003.2 ................................................................................................. 3

8 C.F.R. § 1003.6(b) ........................................................................................... 3

**Introduction**

Nothing in Petitioners' Opposition overcomes Respondents' compelling showing that the Court should dismiss this case.  The Court lacks jurisdiction over Count Five because, as the Supreme Court explained in *Jennings v. Rodriguez*, 8 U.S.C. § 1252 bars jurisdiction not only when an alien directly challenges his removal order, but also when an alien challenges "the decision to detain [him] in the first place or to seek removal."  138 S. Ct. 830, 841 (2018).  *Jennings* also demonstrates that the Court lacks jurisdiction over Counts One and Two, which challenge Respondents' decision to detain Petitioners in the first place.

Counts One and Two also are barred by 8 U.S.C. § 1231(h) because those Counts challenge Government conduct that derives its statutory authority from § 1231.  Counts Three and Four fail because Petitioners have not established that their detention is unlawful and have not plausibly alleged the Government did not afford them due process.  Petitioners have received due process, their detention is lawful, and the Court should dismiss this action.

**Argument**

**A.    The Court Lacks Jurisdiction Over Count Five.**

This Court recently held that because "[P]etitioners do not directly challenge their orders of removal," 8 U.S.C. § 1252 does not strip the Court of jurisdiction to stay the execution of Petitioners' removal orders (the relief that Petitioners seek in Count Five).  *Chhoeun v. Marin*, 2018 WL 566821, at *8 (C.D. Cal. Jan. 25, 2018) (citing *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004)).  A subsequently issued Supreme Court decision demonstrates that the Court erred.[1]  In *Jennings v. Rodriguez*, the Supreme Court held that 8 U.S.C. § 1252(b)(9) did not bar jurisdiction because the aliens

---

[1] The Court's rulings at the preliminary-injunction stage do not bind the Court at the motion-to-dismiss stage.  *See Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).

"[were] not asking for review of an order of removal," "[were] not challenging the decision to detain them in the first place or to seek removal," and "[were] not even challenging any part of the process by which their removability [was to] be determined." 128 S. Ct. at 841. According to the Supreme Court, however, § 1252(b)(9) bars jurisdiction not only when an alien "ask[s] for review of an order of removal," but also when—as is the case here—an alien "challeng[es] the decision to detain [him] in the first place or to seek removal." *Id.*; *id.* at 855 (Thomas, J., concurring) ("Section 1252(b)(9) is not restricted to challenges to removal orders.").

Ninth Circuit law is consistent with the Supreme Court's recent holding in *Jennings*. *See J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031–33 (9th Cir. 2016). Numerous courts in the Ninth Circuit have recognized that "[a] request to halt the execution of a final removal order 'arise[s] from' an 'action' or a 'proceeding' brought in connection with [an alien's] removal (8 U.S.C. § 1252(b)(9)), or from 'the decision or action' to 'execute removal orders against' [an alien] (8 U.S.C. § 1252(g))." *Flores v. Johnson*, No. 15-cv-7167, 2015 WL 12656240, at *2 (C.D. Cal. Sept. 30, 2015) (collecting cases); *Xiaoyuan Ma v. Holder*, 860 F. Supp. 2d 1048, 1059 (N.D. Cal. 2012) ("[R]equesting a stay of execution of the BIA's removal order . . . falls within the ambit of section 1252(g)."). If a request to stay the execution of a removal order did not arise from a "decision or action" to "execute removal orders," § 1252(g) would mean nothing at all. In accordance with *Jennings*, Ninth Circuit law, and § 1252's plain text, the Court should hold that 8 U.S.C. § 1252 deprives it of jurisdiction to stay the execution of Petitioners' removal orders. The Court should then consider whether § 1252 violates the Suspension Clause as applied.

Applying § 1252 to Petitioners does not violate the Suspension Clause. The Suspension Clause permits Congress to eliminate habeas jurisdiction if it

provides "adequate substitute procedures." *Boumediene v. Bush*, 553 U.S. 723, 771 (2008).  In the removal context, Congress has provided an adequate habeas substitute: aliens may petition for review of their removal orders and motions to reopen in the courts of appeals.  *Singh v. Mukasey*, 533 F.3d 1103, 1106 (9th Cir. 2008) ("A petition for review with the court of appeals constitutes 'an adequate substitute for district court habeas corpus jurisdiction.'" (quoting *Puri v. Gonzales*, 464 F.3d 1038, 1042 (9th Cir. 2006))).

Despite the Ninth Circuit's clear holding, Petitioners argue that the motion-to-reopen procedure is inadequate in their cases because, in the absence of a district-court stay of removal, the Government may remove them before they can file motions to reopen, which would force them to "litigate motions to reopen from abroad."  TRO Appl. at 20, ECF No. 28.  The Court should reject that argument for two reasons.

First, the motion-to-reopen procedure is an adequate habeas substitute.  *See* Mot. to Dismiss at 17–18.  The Board of Immigration Appeals ("BIA") and immigration courts hold jurisdiction to grant a stay of removal when an alien moves for one in conjunction with a motion to reopen.  8 U.S.C. § 1103; 8 C.F.R. §§ 1003.2(f), 1003.6(b), 1003.23(b)(1)(v).  The administrative tribunals assign emergency stay requests the "utmost priority" and quickly adjudicate them in emergency cases.  Decl. of Christopher Gearin ¶¶ 12, 17 (Jan. 9, 2018), ECF No. 60-5.

Second, even if the administrative tribunals did not provide an adequate habeas substitute, the courts of appeals' authority to stay the execution of Petitioners' removal orders would still satisfy the Suspension Clause.  *See Telecomms. Research & Action Ctr. v. F.C.C.*, 750 F.2d 70, 75 (D.C. Cir. 1984) (holding that "where a statute commits review of agency action to the Court of Appeals, any suit seeking relief that might affect the Circuit Court's future jurisdiction is subject to the *exclusive* review of the Court of Appeals"); *Garcia v.*

1    *Holder*, 788 F. Supp. 2d 326, 331-32 (S.D.N.Y. 2011) (explaining that a court of

2    appeals can stay a removal order to guard against the possibility of wrongful

3    removal, even if the administrative tribunals have not yet adjudicated the alien's

4    motion to reopen).

5         In *Khan v. Attorney General*, the Third Circuit granted an emergency

6    motion to stay removal even though the petitioner filed the motion *before* the

7    BIA ruled on his administrative motions to reopen and stay.  691 F.3d 488, 492

8    (3d Cir. 2012).  As the *Khan* order demonstrates, and as at least one federal

9    court has explained, an appeals court can stay a removal order to guard against

10   the possibility of wrongful removal:

11        It therefore is possible that petitioner would be unable to pursue his
          [motion to reopen] if he were removed before it is resolved. But that
12        possibility does not empower this Court to grant petitioner the relief
          that he seeks. As stated above, this Court is without "jurisdiction to hear
13        any . . . claim . . . by . . . an alien arising from the decision or action by
          the Attorney General to . . . execute removal orders against any alien."
14        This does not mean, however, that petitioner has no means of protecting
          his ability to pursue his [motion to reopen].
15
16
17        The Second Circuit would have the authority to review a denial by the
          BIA of petitioner's [motion to reopen], provided that a proper petition
18        for review were filed before that court within 30 days after the ruling.
          Petitioner therefore is at liberty to move in that court under the All Writs
19        Act for a stay of removal and to argue that a stay is necessary to protect
          the Court of Appeals's ability ultimately to determine whether any
20        denial of the [motion to reopen] were proper.
21
22   *Garcia*, 788 F. Supp. 2d at 331–32 (footnotes omitted).

23        As the *Garcia* court recognized, the possibility that Petitioners will be

24   removed before the administrative tribunals resolve their motions to reopen (or

25   before Petitioners file their motions) does not empower the Court to stay their

26   removal orders.  *Id.* at 331.  If Petitioners wish to guard against the possibility of

27   wrongful removal, their sole federal-court remedy is to move for stays of removal

28   in the courts of appeals, citing those courts' authority under the All Writs Act to

preserve their power to grant effective relief if an administrative decision on a motion to reopen is eventually presented to them for review. *Id.* at 332; *see Khan*, 691 F.3d at 492; *Telecomms. Research & Action Ctr.*, 750 F.2d at 75.

Unlike the district-court-stay remedy that Petitioners propose, an appeals-court-stay remedy is consistent with federal law, which explicitly channels all challenges to removal orders to the courts of appeals. *See* 8 U.S.C. § 1252(b)(9). And the availability of that remedy unquestionably satisfies the Suspension Clause because it affords Petitioners a pre-removal opportunity to present their substantive removal defenses. For these reasons, the Court should apply § 1252 and dismiss Count Five for lack of jurisdiction.

**B.     The Court Lacks Jurisdiction Over Counts One and Two.**

Section 1252 also bars jurisdiction over Counts One and Two because they challenge ICE's decision to detain Petitioners in the first place. As the Supreme Court explained in *Jennings*, § 1252(b)(9) applies not only when an alien directly challenges his removal order, but also where, as here, an alien "challeng[es] the decision to detain [him] in the first place or to seek removal." 138 S. Ct. at 841.

In Count One, Petitioners claim that ICE unlawfully revoked their release. In contrast to an unlawful-detention claim (which Petitioners assert in Count Three), a claim that ICE unlawfully revoked an alien's release "challeng[es] the decision to detain [the alien] in the first place." *Id.* Section 1252 therefore applies to Count One—and bars that Count.

In Count Two, Petitioners challenge ICE's alleged failure to follow regulatory procedures in the decision to re-detain Petitioners. These allegations challenge ICE's actions that arise from their decision to detain Petitioners, and are also barred by § 1252. *See J.E.F.M.*, 837 F.3d at 1031.

Petitioners assert that "habeas is *always* available to review immigration detention," including "challenges to post-final order detention." Resp. at 9. But in

5

contrast to Count Three, Counts One and Two do not challenge Petitioners'
detention itself.  Rather, it "challeng[es] the *decision to detain* [Petitioners] in the
first place." *Jennings*, 138 S. Ct. at 841 (emphasis added).

Petitioners also invoke the *Jennings* Court's statement that "[an] expansive
interpretation of § 1252(b)(9) would lead to staggering results."  Resp. at 9
(quoting *Jennings*, 138 S. Ct. at 840).  But applying § 1252 to Counts One and
Two would not be the staggering result against which the *Jennings* Court
cautioned.  Indeed, the *Jennings* Court identified three types of claims that would
be "absurd" to cram into § 1252 review: (1) a *Bivens* claim, (2) a state-law claim
for assault against a guard or fellow detainee, and (3) a tort claim against the driver
of a truck that hit a bus that was transporting aliens to a detention facility.
*Jennings*, 138 S. Ct. at 840.  Unlike those tort claims, Count One "challeng[es] the
decision to detain [Petitioners] in the first place." *Id.*  Count Two challenges
actions arising from that decision.  8 U.S.C. § 1252(b)(9).  Thus, applying § 1252
to Counts One and Two would not be a staggering result, but rather a result that
*Jennings* requires and that is in accordance with the statute as written by Congress.
The Court should dismiss Counts One and Two for lack of jurisdiction.

**C.    Section 1231(h) Bars Counts One and Two.**

Petitioners contend that 8 U.S.C. § 1231(h) does not bar Counts One and
Two because the Court's jurisdiction over those counts allegedly derives from the
habeas and Administrative Procedure Act ("APA") statutes, not from § 1231.
Resp. at 11.  Petitioners' argument defies logic.  Section 1231 is not a jurisdictional
statute, and thus could *never* be the jurisdictional basis for a claim.  If a petitioner
could escape § 1231(h)'s bar simply by pointing to a statute that conferred
jurisdiction for his claims—as must always be the case—§ 1231(h) would be
rendered meaningless.

In *Zadvydas v. Davis*, the Supreme Court recognized that Section 1231(h)
"forbids courts to construe [Section 1231] 'to create any . . . procedural right or

1  benefit that is legally enforceable.'"  533 U.S. 678, 687 (2001) (quoting 8 U.S.C.

2  § 1231(h)).  The Court then noted that Section 1231(h) "does not deprive an alien

3  of the right to rely on 28 U.S.C. § 2241 to challenge detention that is *without*

4  *statutory authority*."  *Id.* at 688 (emphasis added).  In other words, under

5  § 1231(h), an alien may not challenge compliance with § 1231 or its implementing

6  regulations.  To the extent that Petitioners contend that § 1231(h) does not deprive

7  an alien of the right to challenge Government conduct that is *without statutory*

8  *authority*, the parties are in agreement.

9        The key to the parties' disagreement lies in the phrase "without statutory

10  authority," which Petitioners largely ignore.  In the case at hand, Petitioners'

11  claims in Counts One and Two challenge Government conduct that derives its

12  statutory authority from § 1231.  In those Counts, Petitioners allege that ICE

13  violated their rights under 8 C.F.R. § 241.13(i), which is a regulation that the

14  Attorney General promulgated under the authority of 8 U.S.C. § 1231(a)(6).  *See*

15  Continued Detention of Aliens Subject to Final Orders of Removal, 66 Fed. Reg.

16  56,967, 56,976 (Nov. 14, 2001).  Because Counts One and Two seek to enforce an

17  alleged "procedural right or benefit" that flows from § 1231, § 1231(h) bars Counts

18  One and Two regardless of Petitioners' claimed jurisdictional basis.  Indeed, if

19  § 1231(h) does not apply here, it is hard to imagine a scenario in which it would

20  apply, rendering superfluous this statutory subsection enacted by Congress.

21  **D.    Count One Does Not State a Valid APA Claim, and the Habeas**

22  **Component of Count One Should Be Rejected Too.**

23        Petitioners contend that Count One states both APA and habeas claims.

24  Resp. at 11.  Petitioners' arguments should be rejected.  First, Count One does not

25  state a valid APA claim.  The APA authorizes judicial review only of "final agency

26  action for which there is no other adequate remedy in a court."  5 U.S.C. § 704.

27  Here, the habeas statute provides "[an]other adequate remedy."  *Id.*

28

7

In Counts One and Three, Petitioners seek an order of release.  Am. Compl. ¶¶ 57, 71.  Count Three is a habeas claim as to which the parties agree that the Court holds jurisdiction.  Because the habeas statute provides a means for Petitioners to obtain the remedy that they request in Count One, "there is [an]other adequate remedy," and Count One is not cognizable under the APA.

Second, if the Court gets beyond § 1231(h) and applies habeas review to Count One, it still should deny relief.  Petitioners allege that ICE revoked their release in violation of 8 C.F.R. § 241.13(i)(2), which authorizes ICE to "revoke an alien's release . . . if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."

Here, the changed circumstance that supported revocation was the fact that Cambodian officials had agreed to conduct travel document interviews for a group of Cambodian aliens that included Petitioners.  Decl. of Deputy Asst. Dir. John A. Schultz, Jr. (Jan. 10, 2018) ("Schultz Decl. II") ¶¶ 14–15, ECF 60-1.[2]  Petitioners allege that "Respondents did not have [evidence of changed circumstances] *at the time of revocation*," Resp. at 12, but the second Schultz Declaration refutes that allegation.  *Id.* ("Based on [an agreement reached at an October 13, 2017 meeting with Cambodian officials], ICE . . . revoked the release . . . .").

Petitioners also argue that "because this a motion to dismiss, the Court cannot resolve disputed questions about the sufficiency of evidence."  Resp. at 12.  However, the Rule 12(b)(6) standard does not apply in the context of a habeas claim.  In adjudicating a habeas claim, "[t]he court shall summarily hear and *determine the facts*."  28 U.S.C. § 2243 (emphasis added); *see id.* ("Unless the application for the writ and the return present *only issues of law* . . . .").  The Court

---

[2]  To the extent Petitioners have now made clear that Count One includes a habeas claim, *see* Response at 1, Respondents cite to the exhibits here only in the context of the habeas claim.

thus, in the context of the habeas claim, may consider the Schultz Declaration, which demonstrates that ICE revoked Petitioners' release because Cambodian officials had agreed to interview Petitioners for travel documents.  And because Cambodia's agreement to conduct travel document interviews constitutes a changed circumstance upon which ICE determined that Petitioners' removals were reasonably foreseeable, ICE did not violate 8 C.F.R. § 241.13(i)(2) when it revoked Petitioners' release.  The Court should therefore deny and dismiss the claim in Count One that ICE unlawfully revoked Petitioners' release.

**E.     Count Three Should Be Denied.**

The Court should deny and dismiss Count Three, a habeas challenge to Petitioners' detention contending there is no significant likelihood of removal in the reasonably foreseeable future.  To start, Count Three is moot as to Petitioner Neth because ICE has released him from detention.  Schultz Decl. II ¶ 19.  Moreover, Respondent ICE's detention of Petitioner Chhoeun is lawful under 8 U.S.C. § 1231(a).

Under Supreme Court precedent, an alien-petitioner who challenges the lawfulness of his detention under § 1231(a) bears the burden to provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.  Only if the alien carries his burden is the Government required to "respond with evidence sufficient to rebut that showing." *Id*.

Here, Petitioner Chhoeun has failed to meet his burden of establishing "good cause" to believe that his removal is not significantly likely to occur in the reasonably foreseeable future. *See* Mot. to Dismiss ¶ V.C.1.  Moreover, ICE has presented sufficient evidence to show that Chhoeun's removal is reasonably foreseeable.  Indeed, the evidence now before the Court establishes that (1) "[b]eginning in 2002 and every year since then, the United States has repatriated Cambodian nationals with final orders of removal in accordance with an agreement

with the Cambodian government," Decl. of Deputy Asst. Dir. John A. Schultz, Jr. (Dec. 14, 2017) ("Schultz Decl. I") ¶ 6, ECF No. 33-2; (2) "between October 31, 2017 and November 10, 2017, Cambodian government officials interviewed" Chhoeun for travel documents, *id.* ¶ 30; and (3) Respondent "ICE is continuing to work with the Government of Cambodia to secure a travel document for" Chhoeun.[3]  Decl. of Deputy Asst. Dir. John A. Schultz, Jr. (Feb. 6, 2018) ("Schultz Decl. III") ¶ 3, ECF No. 80-3.  Because these facts demonstrate that Chhoeun's removal is likely to occur in the reasonably foreseeable future, Chhoeun's detention is lawful under 8 U.S.C. § 1231, *see also* Mot. to Dismiss at 22–24, and the Court should dismiss Count Three.

**F.     Count Four Should Be Denied.**

Finally, this Court must also dismiss Count Four.  In their Opposition, Petitioners purport to clarify that Count Four is based on their position that because they were on supervised release, they are entitled to "some form of impartial review" and "some orderly process" before re-detention.  Resp. at 17.  But Petitioners have received due process, and Count Four must be dismissed.

The Due Process Clause does not protect a "benefit . . . if government officials may grant or deny it in their discretion."  *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005); *Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 462-63 (1989); *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983).  Here, the governing statute, 8 U.S.C. § 1231(a)(6), gave Respondents the discretion to detain or release Petitioners.  *See* 8 U.S.C. § 1231(a)(6) ("An alien ordered removed who is . . . removable under section . . . 1227(a)(2) . . . of this title . . . *may* be detained beyond the removal period . . . .") (emphasis added).  Thus, Petitioners' supervised release was granted at the discretion of government officials.  *See infra.*  And the

---

[3] The Court may resolve factual issues as to Count Three because, as explained in Section D, *supra*, the Rule 12(b)(6) standard does not apply in the context of a habeas claim.

implementing regulation governing revocation of release—upon which Petitioners base their claim—itself expressly provides for discretionary revocation. *See* 8 C.F.R. § 241.13(i). Section § 241.13(i)(2) provides that "[t]he [Department of Homeland Security] *may* revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the [Department] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." *Id.* (emphasis added). Because Petitioners were released at the discretion of government officials, and because the revocation regulation confers discretionary authority, the Due Process Clause did not require that Petitioners receive any process before ICE revoked their release.

The Ninth Circuit has recognized that aliens lack a due process interest in the receipt of discretionary relief. *United States v. Villasenor-Martinez*, 25 F. App'x 557, 561 (9th Cir. 2001) (holding that an alien "ha[d] no constitutionally protected right to discretionary relief from removal"). Thus, Petitioners' newly-clarified due process claim fails because it challenges the revocation of benefits that the Secretary of Homeland Security granted in her discretion. Because Petitioners seek discretionary protection from a final order of removal, they can identify no liberty or property interest to which due process protections attach. "The Attorney General's suspension of deportation [is] "an act of grace" which is accorded pursuant to [his] 'unfettered discretion', *Jay v. Boyd*, 351 U.S. 345, 354 (1956), and [can be likened, as Judge Learned Hand observed,] to "a judge's power to suspend the execution of a sentence, or the President's to pardon a convict." 351 U.S. at 354 n.16 (quoting *United States ex rel. Kaloudis* v. *Shaughnessy*, 180 F.2d 489, 491 (2d Cir. 1950)). No due process rights attach in the present context. An order of supervised release is an "act of grace" that rests in the "unfettered discretion" of the Secretary of Homeland Security.

In the present case, Petitioners' orders of supervised release were discretionary benefits bestowed upon them by the government. The Due Process

11

Clause did not protect those benefits or restrict the government's discretion to revoke them. Accordingly, Petitioners fail to state a claim in Count Four.[4]

## Conclusion

For the reasons stated above and in Respondents' combined motion to dismiss and habeas return, the Court should dismiss this action for lack of jurisdiction and for failure to state a claim, and should deny Petitioners' habeas claims.

---

[4] Even assuming *arguendo* that the Due Process Clause applies to Petitioners' orders of supervised release, Petitioners received a constitutionally adequate process. Before Petitioners' re-detention, ICE determined on account of changed circumstances (*i.e.*, Cambodian officials' agreement to conduct travel document interviews) that their removals were significantly likely to occur in the reasonably foreseeable future. *See* 8 C.F.R. § 241.13(i)(2). There is no constitutional basis for imposing a requirement that an independent review by a neutral party occur before revocation—which would impose a substantial burden on the government and would seriously impair the Department of Homeland Security's ability to re-detain aliens for removal in an expeditious manner.

12

Dated:  March 12, 2018

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation

TIMOTHY M. BELSAN
Senior Litigation Counsel

*/s/ Troy D. Liggett*
TROY D. LIGGETT
Trial Attorney
Florida Bar No. 0086788
District Court Section
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 532-4765; (202) 305-7000 (fax)
troy.liggett@usdoj.gov

JOSEPH F. CARILLI, JR.
Trial Attorney

JULIAN M. KURZ
Trial Attorney

*Counsel for Respondents*