# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

|  |  |
|---|---|
| NAK KIM CHHOEUN AND MONY NETH, individually and on behalf of a class of similarly situated individuals,<br><br>Petitioners,<br><br>v.<br><br>DAVID MARIN, DAVID JENNINGS, THOMAS HOMAN, ELAINE DUKE, JEFFERSON SESSIONS III, SANDRA HUTCHENS, AND SCOTT JONES,<br><br>Respondents. | Case No.: SACV 17-01898-CJC(GJSx)<br><br>**ORDER GRANTING IN SUBSTANTIAL PART PETITIONERS' MOTION FOR CLASS CERTIFICATION** |

//
//
//

# I. INTRODUCTION

This action challenges the Government's policy of arbitrarily rounding up and placing in immigration detention individuals who have been living peaceably in our communities for years.[1] Petitioners Nak Kim Chhoeun and Mony Neth claim that they, along with approximately 1,900 individuals, are subject to this policy. Chhoeun and Neth bring this putative class action on behalf of these 1,900 individuals to challenge the Government's policy as contrary to constitutional, statutory, and regulatory law.

The proposed class members are all citizens of Cambodia living in the United States. Many fled Cambodia in the 1970s as small children to escape the brutal Khmer Rouge regime. Although they have been living in the United States for many years, they are subject to orders of removal to Cambodia based on criminal convictions that they suffered years ago. When the orders of removal were issued, which in many cases occurred over a decade ago, the proposed class members were not deported because Cambodia refused to accept their repatriation. Instead, U.S. Immigration and Customs Enforcement ("ICE") determined that they were not flight risks and did not pose a danger to society, and released them from custody.

Then, in October 2017, ICE began rounding up and re-detaining the proposed class members without warning or explanation. Approximately 100 proposed class members were abruptly re-detained in the fall of 2017. They were arrested on their way to work or during routine meetings with ICE. Among those re-detained were Petitioners Chhoeun and Neth. Prior to their re-detention, Chhoeun and Neth had been carrying out their lives

---

[1] "The Government" refers to Respondents David Marin, Field Office Director, Los Angeles Field Office, United States Immigration and Customs Enforcement; David Jennings, Field Office Director, San Francisco Field Office, United States Immigration and Customs Enforcement; Thomas Homan, Acting Director, United States Immigration and Customs Enforcement; Kirstjen Nielsen, Secretary of the Department of Homeland Security; and Jefferson Sessions III, United States Attorney General.

without incident for over a decade. Nevertheless, they were detained because the Government's policy allows ICE to re-detain and deport any individual subject to a removal order without any process. The Government's policy allows ICE to re-detain such individuals without notice, without an opportunity to challenge their removal, and without a chance to say goodbye to their employers, coworkers, family, and loved ones.

Petitioners now seek to certify the proposed class of 1,900 Cambodian citizens who, like them, received removal orders, were subsequently released from immigration detention, and now have been or may be re-detained by ICE. (Dkt. 139 [Motion for Class Certification, hereinafter "Mot."].) Petitioners claim that each proposed class member is subject to the Government's unlawful policy of re-detaining removeable individuals without any prior notice or opportunity to be heard. For the following reasons, the Court **GRANTS IN SUBSTANTIAL PART** Petitioners' motion for class certification.

## II. BACKGROUND

### A. Petitioners' Background

Petitioner Chhoeun is a 42-year-old citizen of Cambodia, who has been living in the United States since he was six years old. (Dkt. 27 [First Amended Complaint, hereinafter "FAC"] ¶ 26.) When Chhoeun and his family entered this country, they were sponsored as refugees fleeing the Khmer Rouge regime. (Dkt. 28-2 [Declaration of Nak Kim Chhoeun, hereinafter "Chhoeun Decl."] ¶ 2.) In 1999, when Chhoeun was in his twenties, he pleaded guilty to crimes of simple assault and unlawful possession of a firearm. (FAC ¶ 26.) Based on these convictions, Chhoeun received an order of removal to Cambodia in 2002, and was detained by ICE. (Chhoeun Decl. ¶ 7.) Cambodia would not accept Chhoeun's repatriation, however, and he was released from custody in November 2003. (*Id*. ¶¶ 7–8.) Since his release over fourteen years ago, Chhoeun rebuilt

his life, complied with all conditions of his release, and had no further convictions or arrests. (*Id.* ¶ 8.) By many accounts, Chhoeun is a changed person and a compassionate son, brother, and friend. (*See* Dkt. 86-2 [Declaration of Martha Ruch] Ex. B [Compendium of Twenty-Three Letters of Support from Chhoeun's Friends and Family].)

Petitioner Neth is also a 42-year-old citizen of Cambodia, who entered the United States when he was ten years old. (FAC ¶ 27.) Neth's family also fled Cambodia as refugees. (Dkt. 28-9 [Declaration of Mony Neth, hereinafter "Neth Decl."] ¶¶ 2–4.) In 1995, when Neth was in his twenties, he was convicted of unlawful possession of a weapon and receipt of stolen property. (*Id.* ¶ 4.) In 1997, Neth was ordered removed based on his convictions and detained by ICE, but was released from custody shortly after. (*Id.* ¶ 5.) Since his release twenty years ago, Neth built a family, complied with all conditions of his release, and had no further convictions or arrests. (*Id.*) Neth is a member of his local church and regularly serves meals to the homeless. (*Id.* ¶ 12.) He lives in Modesto, California with his wife, 16-year-old daughter, and parents, all U.S. citizens. (*Id.* ¶ 3.)

Many of the proposed class members have followed paths similar to Chhoeun and Neth. They fled Cambodia as small children, and the United States is the only home they know. (*See, e.g.*, Dkt. 28-8 [Declaration of Rottanak Kong, hereinafter "Kong Decl."] ¶ 2.) They are subject to removal orders for crimes they committed over a decade ago, when they were in their teens and twenties. (*Id.* ¶ 5.) Since the removal orders were issued, proposed class members were released from custody and became productive members of their communities. (*Id.* ¶¶ 9, 11; *see also* Dkt. 139-2 [Declaration of Boroeun Chhin, hereinafter "Chhin Decl."] ¶¶ 4–5.) They support and care for their family members who are U.S. citizens and who, in some instances, are even members of the U.S. Armed Forces. (Kong Decl. ¶ 12 [proposed class member's brother is a U.S.

Marine training to go to Afghanistan]; *see also* Chhin Decl. ¶ 8 [after proposed class member was detained, his young sons and wife were forced to move out of their residence because they could not afford rent].) The proposed class members in large part have turned their lives around since their criminal convictions.

### B. The Government's Policy

Beginning in October 2017, the Government began re-detaining Petitioners and proposed class members, who had been living on supervised release for many years. Chhoeun was re-detained in mid-October 2017, when he reported to his local ICE office for a meeting. (Chhoeun Decl. ¶ 13.) He was given no notice or explanation for his re-detention. (*Id.*) Neth was also re-detained in mid-October 2017. (Neth Decl. ¶ 8.) ICE officers arrested him while he was driving to work and he was given no notice or explanation for his re-detention. (*Id.* ¶¶ 9, 10.) Along with Chhoeun and Neth, 89 other proposed class members were abruptly re-detained in the fall of 2017. (Dkt. 60-1 [Declaration of John Schultz, hereinafter "Schultz Decl."] ¶ 15.) The Government claims these individuals were re-detained to allow Cambodian government officials to interview them and decide whether to accept their repatriation. (*Id.* ¶¶ 14–16.) While in detention, Petitioners and proposed class members faced degrading conditions—they were shackled together and forced to endure day-long bus rides, denied bathroom breaks and adequate meals, and faced extortion from the Cambodian officials who conducted the interviews. (Chhoeun Decl. ¶¶ 14, 16, 17; Dkt. 28-1 [Declaration of Jessica Castellanos] ¶¶ 12–13.)

//
//
//
//

The Government admits that it gave no notice to Petitioners and proposed class members prior to their re-detention, and that it conducted no individualized analysis to determine whether re-detention was necessary. (*See* Dkt. 89 at 8.) The Government's position is that individuals subject to removal orders, even those who were released from custody many years ago, are not entitled to any procedural protections before they are re-detained. (*Id.* at 11 [arguing that "the Due Process Clause did not require that Petitioners receive any process before ICE revoked their release"].) The Government employed this policy against the approximately 100 proposed class members that were re-detained in the fall of 2017, and continues to do so against additional proposed class members. (Chhin Decl. ¶ 6 [proposed class member was arrested and re-detained without procedural protections in April 2018].) In other words, before an individual is plucked from his life and family and forced to endure detention, the Government conducts no analysis of whether that individual is dangerous, a flight risk, or has done anything else warranting his or her re-detention. This policy threatens all 1,900 proposed class members with the possibility of re-detention at any time, without any notice or opportunity to be heard.

**C. Procedural History**

Petitioners brought this action on October 27, 2017, soon after ICE re-detained them without explanation. (Dkt. 1.) Petitioners claim that the Government violated the due process clause of the Constitution, along with several immigration regulations and statutes, when it re-detained them. (*See generally* FAC.) Petitioners seek injunctive and declaratory relief to enjoin the Government's conduct. (*Id.* at Prayer for Relief.)

In early December 2017, Petitioners learned that they and other detainees were scheduled to be deported to Cambodia as soon as December 18, 2017. (Dkt. 28 at 1.) In light of the imminent removals, Petitioners filed an application for a temporary

restraining order on December 12, 2017, asking the Court to stay deportations for approximately 60 days until February 5, 2018.  (*See generally id.*)  Petitioners explained that this additional, limited time was necessary to give those who wanted to file motions to reopen their removal orders an opportunity to do so.  (*Id.*)

The Court granted the temporary restraining order on December 14, 2017, and ordered the Government to show cause why a preliminary injunction should not be issued.  (Dkt. 32.)  After additional briefing and evidence submitted by the parties, the Court entered a preliminary injunction on January 25, 2018, enjoining deportations until February 5, 2018, to afford detainees an opportunity to file motions to reopen.  (Dkt. 75.)  For detainees who filed a motion to reopen by February 5, 2018, their removals were enjoined for an additional, limited period to adjudicate motions to stay their removals before the appropriate courts.  (*Id.*)

Since this lawsuit was filed, Petitioners and many proposed class members have concurrently pursued individual avenues of relief, including by filing motions to reopen their removal orders and habeas petitions.  Chhoeun filed a motion to reopen on February 5, 2018. (Dkt. 141 [Opposition, hereinafter "Opp."] at 3.)  While his motion was pending the Court granted him habeas relief on March 26, 2018, and ordered him released from detention.  (*See* Dkt. 104.)  The Board of Immigration Appeals denied Chhoeun's motion to reopen on May 16, 2018, but Chhoeun is appealing the decision to the Third Circuit and his deportation has been stayed pending the appeal.  (Opp. at 3.)  As for Neth, the Governor of California granted him a full and unconditional pardon for his crimes on December 6, 2017.  (Dkt. 28-12 Ex. A.)  Based on the pardon, Neth filed his motion to reopen on December 13, 2017, and ICE released Neth from detention on December 22, 2017, pending the outcome of his motion.  (*Id.* at 4.)

//

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 23, district courts have broad discretion to determine whether a class should be certified. *Armstrong v. Davis*, 275 F.3d 849, 871 n.28 (9th Cir. 2001) (abrogated on other grounds). The party seeking class certification bears the burden of showing that each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) are met. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001); Fed. R. Civ. P. 23. Rule 23(a) provides that class certification is appropriate if: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). These four requirements are often referred to as numerosity, commonality, typicality, and adequacy. *See General Tel. Co. v. Falcon*, 457 U.S. 147, 156 (1982).

Rule 23(b) defines different types of classes. *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2012). Petitioners seek to certify the proposed class under Rule 23(b)(2). Rule 23(b)(2) requires that the party opposing the class "has acted or refused to act on grounds that apply generally to the class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

//
//
//
//
//
//

## IV. DISCUSSION

Petitioners seek to certify a class of "all Cambodian nationals in the United States who received final orders of deportation or removal, and were subsequently released from ICE custody, and have been or may be re-detained for removal by ICE." (*See* Mot. at 3.) The Court addresses each Rule 23 requirement in turn.

### A. Numerosity

A putative class satisfies the numerosity requirement if it is impracticable to litigate each putative class member's claims separately. *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913 (9th Cir. 1964). "'[I]mpracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *Id*. at 913–14 (citation omitted). There is no threshold number of class members that satisfies the numerosity requirement. But as a general matter, "courts have found that the numerosity factor is satisfied if the class comprises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer." *Wamboldt v. Safety-Kleen Sys., Inc.*, 2007 WL 2409200, at *11 (N.D. Cal. Aug. 21, 2007).

Petitioners and the Government agree that the proposed class consists of 1,900 individuals across the United States. (FAC ¶ 50; Schultz Decl. ¶ 7.) A class of this size clearly meets the numerosity requirement.[2] *del Campo v. Am. Corrective Counseling Servs., Inc.*, 254 F.R.D. 585, 592 (N.D. Cal. 2008) ("A class of one thousand members

---

[2] The Government argues that the numerosity requirement has not been met because only 31 individuals who meet the class definition are currently detained. (Opp. at 8–13.) The Government's argument is irrelevant. Petitioners seek to certify a class of individuals who are or *may be* detained under the Government's policy, not only those who are currently in detention. All parties agree that the class as defined by Petitioners consists of 1,900 members.

'clearly satisfies the numerosity requirement.'") (quoting *Sullivan v. Chase Inv. Servs., Inc.*, 79 F.R.D. 246, 257 (N.D. Cal. 1978)).

### B. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Commonality requires the plaintiff to "demonstrate that the class members 'have suffered the same injury,'" which "does not mean merely that they have all suffered a violation of the same provision of law." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011) (quoting *General Tel. Co.*, 457 U.S. at 157). The "claims must depend upon a common contention" and "[t]hat common contention . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. "[A]ll that Rule 23(a)(2) requires is 'a single significant question of law or fact.'" *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (quoting *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012)). Commonality is satisfied where the plaintiff shows that all proposed class members have been subjected to a uniform policy or practice. *Hernandez v. Lynch*, 2016 WL 7116611, at *17 (C.D. Cal. Nov. 10, 2016), *aff'd sub nom. Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017); *see also Inland Empire-Immigrant Youth Collective v. Nielsen*, 2018 WL 1061408, at *8 (C.D. Cal. Feb. 26, 2018) ("The Ninth Circuit has held that in a civil-rights suit, commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members.").

The Court finds that commonality is satisfied here. The central question in this case is whether the Government's policy of revoking proposed class members' release and re-detaining them without any procedural protections is unlawful. The Government admits that this policy applies to each of the proposed class members, whose release can

be revoked without any notice or opportunity to be heard. Petitioners claim the policy is unlawful, under various constitutional, statutory, and regulatory laws. The Government claims the policy is warranted under the same laws. Regardless of which party is correct, the answer to this central question will resolve the claims in this litigation.

The Government argues that commonality is not satisfied because the individual circumstances of each proposed class member govern the scope of procedural protections to which he or she is entitled. (Opp. at 13–20.) The Government claims that some proposed class members may not be entitled to any notice before re-detention because they committed recent, new crimes, or they will attempt to abscond. (*Id*. at 18.) In support of its argument, the Government has identified five individuals who would meet Petitioners' proposed class definition but who, because of safety concerns, should not be granted the procedural protections Petitioners seek. (Dkt. 115-1 [Declaration of John Schultz] ¶¶ 7, 8, 9, 11, 12.) These individuals have violated the conditions of their release either by fleeing from ICE and absconding, or by committing new crimes while on release. (*Id*.)

The Court agrees with the Government that individuals who have violated the terms and conditions of their release, whether it be by absconding or committing new crimes, should not be given any procedural protections before re-detention. Such individuals risk the public safety and have evidenced a disregard for the criminal laws and the conditions of their release. However, the Court does not find that these individuals warrant the denial of class certification altogether. Instead, the Court finds it appropriate to carve out from the class definition this limited number of individuals—which by the Government's own count consists of only a handful of individuals. *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 546 (9th Cir. 2013) ("Rule 23 provides district courts with broad authority . . . to redefine or decertify classes as appropriate."). Accordingly, the Court will redefine Petitioners' proposed class and except from the class

definition any individual who has violated the conditions of his or her supervised release or committed new crimes while on release.

Each member of the redefined class share a common question: whether they should be given notice and an opportunity to be heard before they are re-detained. Resolving this question will not require the Court to make individualized inquiries of the class members. Rather, the Court will only be required to determine whether the Government's uniform policy of re-detaining class members without any procedural protections is unlawful. The Court therefore finds that the proposed class as redefined satisfies the commonality requirement. *See Parsons v. Ryan*, 754 F.3d 657, 678 (9th Cir. 2014) (finding commonality requirement was met where class action brought by Arizona inmates challenged certain statewide policies and practices relating to their medical care and conditions of confinement as unlawful).

**C. Typicality**

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "The test of typicality is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Parsons*, 754 F.3d 685 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). The purpose of the typicality requirement is to "assure that the interest of the named representative aligns with the interests of the class." *Hanon*, 976 F.2d at 508.

Petitioners' alleged injury is the deprivation of notice and an opportunity to be heard before the Government revoked their release and re-detained them. This injury is the result of a uniform policy that is applied to all class members, and is not unique to

Petitioners. The approximately 100 class members who were re-detained with Petitioners in the fall of 2017 experienced the same injury. The Government has no intention of changing their policy towards the approximately 1,800 other class members who have not yet been re-detained, so those members risk the same injury. Petitioners and all class members have an interest in resolving the central question raised in this action—whether they are entitled to procedural protections before the Government can re-arrest and re-detain them. The typicality requirement is therefore satisfied.

The Government disputes that the typicality requirement is met by raising the same objections it raised against commonality. (Opp. at 21–23.) In short, the Government claims that typicality is not met because the class members' varying individual circumstances govern whether they are entitled to individual habeas relief. For example, the Government points out that some class members have filed motions to reopen and challenge their removal orders, while others have not. (*Id*. at 22.)

Again, the Court will not be required to make any individualized determinations to resolve Petitioners' claims. Petitioners' injury is the denial of procedural safeguards before they were re-detained. This injury is the result of a uniform policy the Government applies to all class members. Whether some class members may ultimately be entitled to habeas relief after they are re-detained does not matter—this factual difference does not diminish the injury caused by the deprivation of due process before re-detention. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 987 n.9 (9th Cir. 2011) ("Differing factual scenarios resulting in a claim of the same nature as other class members does not defeat typicality.").

//
//
//

**D. Adequacy**

To satisfy the adequacy requirement, Petitioners must show that they and their counsel will fairly and adequately represent the class. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). This requirement ensures that the constitutional protections of due process and full faith and credit are afforded to absent class members. *Hansberry v. Lee*, 311 U.S. 32, 43 (1940). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

The Government does not dispute the adequacy requirement has been met. (*See generally* Opp.) There is no indication of any conflicts of interest that would render Petitioners or their counsel inadequate. Petitioners Chhoeun and Neth have participated at every stage of this litigation and they represent they will continue to do so on behalf of themselves and the proposed class members. (Dkts. 139-8, 139-9.) Petitioners are represented by Asian Americans Advancing Justice – Asian Law Caucus ("ALC"), a civil rights organization with decades of experience providing legal services to immigrants, including representing them in class actions. (Dkt. 139-3 [Declaration of Jingni Zhao] ¶¶ 3–4.) Petitioners are also represented by the law firm of Sidley Austin LLP, a global law firm with significant experience in class actions and in pro bono immigration cases. (Dkt. 139-6 [Declaration of Michael Mallow] ¶ 3.) ALC and Sidley Austin's extensive litigation experience, expertise in immigration law, and representation of Petitioners in this action demonstrate that they can and will prosecute the action vigorously on behalf of the class.[3]

---

[3] Although the Government does not dispute the adequacy of Petitioners' counsel, the Government asks the Court to monitor their bills to preemptively limit any future request for attorneys' fees and costs. (Dkt. 141 at 23–25.) The Court denies this request. Restricting counsel's work at this stage is premature, as Petitioners have not moved to recover any fees or costs. Further, this is not a case where

### E. Rule 23(b)(2)

Federal Rule of Civil Procedure 23(b)(2) authorizes class actions where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." *Wal-Mart*, 564 U.S. at 360.

The Government readily admits that it has acted and continues to act under the policy that class members are not entitled to any procedural protections before they are re-detained. In challenging this policy, Petitioners seek injunctive and declaratory relief. A single injunction requiring the Government to provide notice and an opportunity to be heard before re-detention would provide relief for each class member. The Court therefore finds that class certification under Rule 23(b)(2) is appropriate. *See Preap v. Johnson*, 303 F.R.D. 566, 587 (N.D. Cal. 2014), *aff'd*, 831 F.3d 1193 (9th Cir. 2016) ("Because Petitioners seek only injunctive and declaratory relief and a single remedy would provide relief for each class member, the proposed class is appropriate for 23(b)(2) certification.").

//
//
//
//
//

any award of fees to class counsel will diminish the relief available to class members. Monitoring counsel's bills would therefore serve no interest.

## V. CONCLUSION

Petitioners challenge the Government's policy of indiscriminately and abruptly re-detaining individuals who have been living peaceably in our country based on the sole fact that they were once ordered removed. The Government contends it is not required to determine whether any of these individuals should be given procedural protections before they are re-detained, whether it be notice, time to wrap up their affairs, or an opportunity to challenge their detentions.

The Court finds that Petitioners' claims, which challenge the Government's uniform policy as unlawful, may proceed as a class action. Accordingly, the Court **GRANTS IN SUBSTANTIAL PART** Petitioners' motion for class certification and hereby **CERTIFIES** the following class:

> All Cambodian nationals in the United States who received final orders of deportation or removal, and were subsequently released from ICE custody, and have not subsequently violated any criminal laws or conditions of their release, and have been or may be re-detained for removal by ICE.

Petitioners are appointed as Class Representatives and Petitioners' counsel, ALC and Sidley Austin LLP, are appointed as Class Counsel.

DATED: August 14, 2018

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE