# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

NAK KIM CHHOEUN, and MONEY NETH, individually and on behalf of a class of similarly situated individuals,

        Petitioners,

        v.

ANDREW QUINONEZ, Field Office Director, Los Angeles Field Office, United States Immigration and Customs Enforcement; SERGIO ALBARRAN, Field Office Director, San Francisco Field Office, United States Immigration and Customs Enforcement; TODD LYONS, Deputy Director and Senior Official Performing the Duties of the Director, United States Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary, United States Department of Homeland Security; TODD BLANCHE, Acting United States Attorney General; SANDRA HUTCHEN, Sheriff of Orange County; and SCOTT R. JONES, Sheriff of Sacramento County,

        Respondents.

Case No. 8:17-cv-01898-JWH-GJS

**ORDER GRANTING PETITIONERS' MOTION FOR SETTLEMENT APPROVAL OF CLASS ACTION SETTLEMENT [ECF No. 401] AND PETITIONERS' MOTION FOR ATTORNEYS' FEES AND COSTS [ECF No. 402]**

**Effective Date of Settlement Agreement: April 27, 2026**

Before the Court are the following matters:

- the joint motion for settlement approval of class action filed by Petitioners Nak Kim Chhoeun and Money Neth, on behalf of themselves and the Settlement Class (collectively, "Petitioners") and by Respondents Andrew Quinonez, Sergio Albarran, Todd Lyons, Markwayne Mullin, and Todd Blanche (collectively, "Respondents");[1] and

- Petitioners' unopposed motion for an award of attorney's fees and costs against Respondents.[2]

The Court conducted a hearing on the Motions on April 17, 2026. After considering the Motions and the argument of counsel during the hearing, the Court orders that the Motions are **GRANTED** for the reasons set forth below.

## I. BACKGROUND

Petitioners are Cambodian nationals with final removal orders who were released on orders of supervision and were later re-detained by ICE for their removal to Cambodia.[3] Petitioners commenced this lawsuit in October 2017, and they sought declaratory and injunctive relief on behalf of a class of Cambodian nationals with final removal orders who were living in the United States.[4] In broad strokes, Petitioners alleged that their re-detention was unlawful because they were not provided with adequate notice.[5]

The Court certified the following class in August 2018:

---

[1]     Joint Mot. for Settlement Approval of Class Action (the "Motion for Settlement Approval") [ECF No. 401].

[2]     Pets.' Mot. for Attorneys' Fees and Costs (the "Motion for Fees and Costs") [ECF No. 402].

[3]     *See generally* First Am. Compl. (the "Amended Complaint") [ECF No. 27].

[4]     *See generally* Compl. [ECF No. 1].

[5]     *See generally* Amended Complaint.

[a]ll Cambodian nationals in the United States who received final orders of deportation or removal, and were subsequently released from ICE custody, and have not subsequently violated any criminal laws or conditions of their release, and have been or may be re-detained for removal by ICE.[6]

In March 2020 the Court granted summary judgment in favor of Petitioners,[7] and in April 2020 the Court permanently enjoined Respondents from re-detaining any members of the class unless ICE first provided written notice.[8]

Respondents appealed this Court's decision to the Ninth Circuit,[9] and, while that appeal was pending, the parties engaged in mediation under the guidance of a Ninth Circuit mediator.[10]  In October 2024 the parties notified the Court that they had reached a settlement, and the parties filed a joint motion for an indicative ruling.[11]  The Court granted the Motion for Indicative Ruling in October 2024,[12] and the Ninth Circuit remanded the action to this Court for the limited purpose of deciding whether to approve the settlement.[13]

---

[6]    Ord. Granting in Substantial Part Pets.' Mot. for Class Cert. (the "Class Certification Order") [ECF No. 149].

[7]    *See* Ord. Granting Pets.' Mot. for Summ. J. (the "Summary Judgment Order") [ECF No. 319].

[8]    J. and Permanent Inj. (the "Judgment") [ECF No. 336].

[9]    Notice of Appeal [ECF No. 341].

[10]    Motion for Settlement Approval 2:20–23.

[11]    Joint Mot. for Indicative Ruling (the "Motion for Indicative Ruling") [ECF No. 360].

[12]    Order Granting the Motion for Indicative Ruling [ECF No. 363].

[13]    Order from Ninth Circuit Court of Appeals [ECF No. 366].

In July 2025 the Court granted the parties' joint motion for preliminary class settlement.[14] Shortly thereafter, the parties filed a stipulation to clarify, *inter alia*, the Settlement Class definition in the Preliminary Approval Order.[15] The Court granted the Clarification Stipulation, ultimately certifying the following class:

> All Cambodian nationals in the United States who received final orders of deportation or removal, and were subsequently released from ICE custody, and have been or may be re-detained for removal by ICE (the "Settlement Class").[16]

In October 2025, because the appropriations act that had been funding the Department of Justice ("DOJ") expired, the Court granted the parties' joint stipulation to stay the case pending the restoration of appropriation to the DOJ.[17] The next month, Respondents filed a notice of restoration of appropriation to the DOJ,[18] and the Court lifted the stay and scheduled the final approval hearing.[19]

## II.  FINAL APPROVAL OF THE SETTLEMENT AGREEMENT

### A.    Overview of the Proposed Settlement Agreement

The proposed Settlement Agreement replaces the Court's permanent injunction with a negotiated set of requirements about how and when ICE must

---

[14]    Order Granting Joint Mot. for Preliminary Class Settlement (the "Preliminary Approval Order") [ECF No. 380].

[15]    Joint Stip. to Clarify the Preliminary Approval Order (the "Clarification Stipulation") [ECF No. 383].

[16]    Order Granting the Clarification Stipulation [ECF No. 384].

[17]    Order Granting the Parties' Stip. to Stay the Final Approval Hr'g [ECF No. 393].

[18]    Not. of Restoration of Appropriation to DOJ [ECF No. 395].

[19]    Order Setting Final Approval Hr'g [ECF No. 397].

serve notice on Cambodians subject to a final removal order who have been released from immigration detention or who are released during the three-year period that the Settlement Agreement remains in effect. Among other things, the required notice will advise Class Members that they are subject to removal from the United States and will provide information about how Class Members may pursue legal remedies. It also will include reports to Class Counsel to facilitate assisting Class Members.

### 1. Settlement Class

The settlement class consists of:

> All Cambodian nationals in the United States who received final orders of deportation or removal, and were subsequently released from ICE custody, and have been or may be re-detained for removal by ICE.[20]

The Settlement Class is divided into two groups. "Group 1 Class Members" are all Cambodian nationals with final removal orders who have been released from detention as of the effective date of the Settlement Agreement.[21] "Group 2 Class Members" are all Cambodian nationals with final removal orders who are released from detention while the Settlement Agreement is in effect—in other words, future Class Members.[22]

### 2. Relief to the Settlement Class

Under the Settlement Agreement, ICE will serve the "Group 1 Notice" on all Group 1 Class Members by October 27, 2026.[23] The Group 1 Notice will

---

[20]    Motion for Settlement Approval, Ex. 1 (the "Settlement Agreement") [ECF No. 401-1] 2:13–15.

[21]    *Id.* at 2:18–20.

[22]    *Id.* at 2:21–23.

[23]    *Id.* at 3:9–13.

advise Group 1 Class Members that they are subject to a final order of removal that ICE may seek to enforce at some time in the future.[24]  The Group 1 Notice will provide information on motions to reopen removal proceedings, contact information for Class Counsel, and instructions for accessing free legal services providers maintained by the Executive Office for Immigration Review ("EOIR").[25]  The Group 1 Notice will also provide information on how Group 1 Class Members can request copies of the records of proceedings from their removal proceedings and copies of their Alien Files.[26]  Each Group 1 Notice will include a copy of the Group 1 Class Member's notice to appear in removal proceedings, administratively final order of removal, and any criminal conviction records upon which the removal order rests.[27]  Under the Settlement Agreement, Respondents will continue to comply with the terms of the Court's permanent injunction until all Group 1 Notices are served.[28]

The Settlement Agreement also requires ICE to serve the "Group 2 Notice" on Group 2 Class Members as part of their order of supervision paperwork when they are released from ICE custody.[29]  The Group 2 Notice is similar in content to the Group 1 Notice and will be served on Group 2 Class Members who are released through April 27, 2029.[30]

---

[24]     *Id.*, Ex. A (the "Group 1 Notice") 1.

[25]     Group 1 Notice 1-2; Settlement Agreement 4:5–11.

[26]     Group 1 Notice 2.

[27]     Settlement Agreement 3:24–4:4.

[28]     *Id.* at 4:15–19.

[29]     *Id.* at 4:22–26.

[30]     *Id.*, Ex. B (the "Group 2 Notice") 1; Settlement Agreement 14:12–16.

### 3.    Notice Plan

The Class Notice provided guidance in plain language about the case, proposed settlement, and Class Members' right to object, and it was translated into the Khmer (Cambodian) language.[31]  Class Members who wished to read a complete copy of the Settlement Agreement could access one through several means identified in the Class Notice, such as through the website, phone number, or addresses provided.[32]  And as outlined by the Notice Plan, the parties effectuated notice to Class Members through several methods, which together were reasonably calculated to reach current Class Members as required by Rule 23(e)(1) of the Federal Rules of Civil Procedure.[33]  Specifically, working with a third-party administrator, Petitioners mailed a copy of the Class Notice to each Group 1 Class Member, using last known contact information provided by Respondents.[34]  Petitioners performed skip tracing and re-mailed returned notices.[35]  Petitioners also sent a copy of the Class Notice to each Group 1 Class Member's counsel who registered with either the DHS or EOIR, using contact information provided by Respondents.[36]  Respondents posted the Class Notice on the website https://www.ice.gov/legal-notices, which is a reasonably

---

[31]    Settlement Agreement 3:7–5:5 & 3:8 n.1; *see generally* Motion for Settlement Approval, Ex. A (the "Class Notice") [ECF No. 401-5].

[32]    Class Notice 3–4.

[33]    Settlement Agreement 3:7–5:5 & 8:21–9:14.

[34]    *Id.* at 9:3–5.

[35]    Decl. of Bentley Conn in Supp. of the Motion for Settlement Approval (the "Conn Declaration") [ECF No. 401-5] ¶ 8.

[36]    Settlement Agreement 9:6–8; Decl. of Winifred Kao in Supp. of the Motion for Settlement Approval (the "Kao Declaration") [ECF No. 401-3] ¶ 16.

accessible location on ICE's website, for at least 60 days.[37]  Likewise, Petitioners posted the Class Notice on the website http://www.CambodiaSettlement.com for at least 60 days.[38]  Petitioners also emailed the Class Notice to listservs of attorneys who provide representation to Class Members.[39]

### 4.    Attorneys' Fees and Costs

In their unopposed Motion for Fees and Costs, Petitioners assert that Respondents have agreed to pay attorneys' fees and costs to Class Counsel in the sum of $500,000.[40]  Petitioners state that "[t]his amount is roughly 7% of Class Counsel's actual fees and expenses, excluding time devoted to obtaining preliminary and final approval, as well as overseeing the settlement process."[41] Petitioners also represent that "Class Counsel incurred in excess of $225,000 just in litigation costs."[42]

### B.    Legal Standard

The Federal Rules of Civil Procedure require the court's approval for class-action settlements.  *See* Fed. R. Civ. P. 23(e).  The court may finally approve a class action settlement "only after a hearing and only on finding that it is fair, reasonable and adequate."  Fed. R. Civ. P. 23(e)(2); *see also Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

The Rules direct the district court to consider the following factors:

---

[37]    Settlement Agreement 9:9–10; Decl. of Troy Liggett in Supp. of the Motion for Settlement Approval (the "Liggett Declaration") [ECF No. 401-2] ¶ 11.

[38]    Settlement Agreement 9:11–12; Kao Declaration ¶ 16.

[39]    Settlement Agreement 9:13–14; Kao Declaration ¶ 16.

[40]    Motion for Fees and Costs 1:10–11.

[41]    *Id.* at 1:12–14.

[42]    *Id.* at 1:16.

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i) the costs, risks, and delay of trial and appeal;

    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and

    (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)–(D).

In the Ninth Circuit, a district court must also consider the eight so-called "*Churchill* factors":

(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021) (quoting *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011), citing *Churchill Vill. L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575-76 (9th Cir. 2004)).

Finally, the district court must approve or reject the settlement as a whole. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."). The court may not delete, modify, or rewrite particular provisions of the settlement. *See id.* The court must remain cognizant that the settlement "is the offspring of compromise; the question . . . is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Id.* In determining whether a proposed settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

C.   **Analysis**

　　1.　**Rule 23(e)(2) Factors**

　　　　a.　**Adequacy of Representation by Class Representatives and Class Counsel and Arm's Length Negotiations**

Under Rule 23(e)(2)(A), the first factor to be considered is whether the class representative and class counsel have adequately represented the class. This analysis includes, for example, "the nature and amount of discovery" undertaken in the litigation, or "the actual outcomes of other cases." Fed. R. Civ. P. 23(e)(2)(A), 2018 Advisory Comm. Notes. Additionally, class counsel and class representatives are deemed adequate if there are no conflicts of interest between the class representatives and other class members and if the named plaintiffs will "vigorously" prosecute the action on behalf of the class. *Hanlon*, 150 F.3d at 1020.

The Court concludes that, here, no conflicts of interest exist between Petitioners and the other class members and that Petitioners have vigorously

prosecuted this action throughout its long procedural history—including by securing two temporary restraining orders, a preliminary injunction, defeating motions to dismiss, conducting and responding to extensive discovery, obtaining summary judgment in their favor, and a permanent injunction.  Thus, this factor is satisfied for the purpose of final approval of the Settlement Agreement.

### b.    Arm's Length Negotiations

Next, the Court considers whether the proposed settlement was negotiated at arm's length.  *See* Fed. R. Civ. P. 23(e)(2)(B).  As with the preceding factor, this factor can be "described as [a] 'procedural' concern[], looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement."  Fed. R. Civ. P. 23(e)(2), 2018 Advisory Comm. Notes.  "[T]he involvement of a neutral or court-affiliated mediator or facilitator in [settlement] negotiations may bear on whether th[ose] [negotiations] were conducted in a manner that would protect and further the class interests."  Fed. R. Civ. P. 23(e)(2)(B), 2018 Advisory Committee Notes.

The Settlement Agreement was reached through the Ninth Circuit's mediation program.[43]  The parties represent that during the negotiations, "the Parties discussed in detail every element of the Settlement Agreement.  Before reaching a final agreement, the Parties explored potential alternative proposals, exchanged multiple drafts, and participated in numerous conferences."[44]  The use of formal mediation and thoroughness of the negotiation gives the Court confidence that the parties negotiated the Settlement Agreement at arm's length.

---

[43]    *See* Motion for Settlement Approval 2:20–23.

[44]    Settlement Agreement 8:22–25.

### c.   Adequacy of Relief Provided for the Class

The third factor assesses whether "the relief provided for the class is adequate, taking into account:  (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C).  Under this factor, the relief "to class members is a central concern."  Fed. R. Civ. P. 23(e)(2)(C), 2018 Advisory Comm. Notes.

### i.   Costs, Risks, and Delay of Further Litigation

"A[] central concern [when evaluating a proposed class action settlement] . . . relate[s] to the cost and risk involved in pursuing a litigated outcome." Fed. R. Civ. P. 23(e)(2), 2018 Advisory Comm. Notes.  In this regard, the test of a settlement is not the maximum amount that the plaintiffs might have recovered, but, rather, whether the settlement is within a reasonable range.  *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 965–66 (9th Cir. 2009) (noting that "district judges naturally arrive at a reasonable range for settlement by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value").

By the time that the parties agreed upon the Settlement Agreement, the parties had vigorously litigated the case for several years and had engaged in extensive discovery and motion practice, including cross-motions for summary judgment.  "Litigation had reached a stage where the parties had a clear view of the strengths and weaknesses of their positions."  *Beirne v. Trepco Imps. & Distrib., Ltd.*, 2020 WL 8669826, at *5 (C.D. Cal. July 28, 2020).  Therefore, the parties were well-positioned to weigh the benefits of the settlement against the risks of continued litigation.

At the time of the negotiations between the parties, the case remained pending before the Ninth Circuit.  Additionally, during that time, the Supreme Court held that 8 U.S.C. § 1252(f)(1) precludes a district court from granting injunctive relief in certain types of immigration class actions.  *See Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022); *see also Immigrant Defs. Law Ctr. v. Mayorkas*, 2023 WL 3149243, at *11–*15 (C.D. Cal. Mar. 15, 2023) (discussing the impact and breadth of *Aleman Gonzalez*).  The parties represent that they "agree that the *Aleman Gonzalez* decision complicated issues on appeal and could have required additional litigation on remand regarding what relief remains available."[45]  At the time the Settlement Agreement was reached, it offered immediate and certain relief to Class Members while eliminating risks posed by Respondents' appeal and the *Aleman Gonzalez* decision.

The Court concludes that the costs, risks, and delay of further litigation support the adequacy of relief provided for the Class in the Settlement Agreement.

   **ii.**  **Effectiveness of the Method of Distributing Relief**

The proposed method of distributing the Group 1 Notices and Group 2 Notices is designed to ensure that as many Class Members as possible receive the benefits of the Settlement and that they are advised of their rights under the Settlement Agreement.[46]  In addition, the Group 1 Notices will be prepared by Respondents and either personally served when a Group 1 Class Member reports under an order of supervision or sent to a Group 1 Class Member's address on file with ICE.[47]  The Group 2 Notices will be personally served on

---

[45] Motion for Settlement Approval 10:23–25.

[46] *See supra* § II.A.2.

[47] Settlement Agreement 3:7–13.

Group 2 Class Members when they are released from detention.[48]  Therefore, the parties are using the most effective method that is feasible to distribute relief to the Class.

Accordingly, the Court concludes that the effectiveness of the method of distribution supports the adequacy of the relief provided for the Class in the Settlement Agreement.

### iii.    Proposed Award of Attorneys' Fees and the *Briseño* Flags

The third prong that the court must consider when assessing the adequacy of the relief relates to "the terms of any proposed award of attorneys' fees, including timing of payment."  Fed. R. Civ. P. 23(e)(2)(C)(iii).  With respect to Rule 23(e)(2)(C)(iii), a district court must undertake an additional inquiry to determine whether "class counsel have allowed [the] pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Cal. Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 674–75 (9th Cir. 2025) (quotation omitted).  The purpose of scrutinizing the fee arrangement is to look for "potential collusion or unfairness to the class."  *Briseño v. Henderson*, 998 F.3d 1014, 1026 (9th Cir. 2021).  To ferret out that potential collusion, the Ninth Circuit instructs a district court to analyze three factors:  (1) whether counsel "receive[d] a disproportionate distribution of the settlement"; (2) whether the parties agreed to a "clear sailing arrangement"; and (3) whether the settlement includes a "kicker" or "reverter" clause.  *Id.* at 1026–27.  Although the presence of those factors is not a death knell for a proposed class action settlement, "[i]f these indicia of implicit collusion are present, then a proposed settlement must withstand an even higher level of scrutiny" than is "ordinarily required under Rule 23(e)."  *Cal. Pizza Kitchen*, 129 F.4th at 675.

---

[48]    *Id.* at 4:24–26.

iv. **Whether Counsel Received a Disproportionate Distribution of the Settlement**

The court's first sign of potential collusion is "when counsel receives a disproportionate distribution of the settlement[.]" *Kaupelis v. Harbor Freight Tools*, 2021 WL 4816833, at *10 (C.D. Cal. Aug. 11, 2021).

Respondents have agreed to pay Class Counsel $500,000 to settle all claims for attorneys' fees and litigation costs. Additionally, the Settlement Agreement contains no settlement fund.

Therefore, in view of the long history of this case and the relief obtained by Petitioners' counsel, the award of $500,000 for attorneys' fees and costs does not support the finding of collusion between the parties.

v. **Whether the Parties Agreed to a Clear-Sailing Arrangement**

The second sign of potential collusion is when the parties negotiate a "clear sailing arrangement," under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee. *See Kaupelis*, 2021 WL 4816833, at *10. "A clear sailing provision signals the potential that a defendant agreed to pay class counsel excessive fees in exchange for counsel accepting a lower amount for the class members." *Briseño*, 998 F.3d at 1026–27.

The instant Motion for Fees and Costs is unopposed, which gives the Court some pause. However, because the parties reached the Settlement Agreement during Ninth Circuit mediation, it is unlikely that the process was collusive. *See Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 324 (N.D. Cal. 2013) ("[T]he settlement was reached after the parties participated in private mediation, which tends to support the conclusion that the settlement process was not collusive." (citation modified)).

Therefore, Respondents' non-opposition to the Motion for Fees and Costs does not support the finding of collusion between the parties.

### vi.    Whether the Settlement Includes a "Kicker"

Finally, the third flag is raised when the agreement contains a "kicker" or "reverter" clause that "returns unawarded fees to the defendant, rather than the class." *Kaupelis*, 2021 WL 4816833, at *10.

Here, there is no reverter clause, so the third indicator of collusion is not triggered. Therefore, none of the *Briseño* flags is clearly raised.

Accordingly, the proposed award of attorney's fees and costs supports the adequacy of the relief provided for the Class in the Settlement Agreement.

### vii.    Agreement Identification Requirement

The court must also evaluate any agreement made in connection with the proposed settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv) & (e)(3).

The Settlement Agreement is the only agreement before the Court. Therefore, this factor weighs in support of adequacy of the relief provided for the Class in the Settlement Agreement.

### d.    Equitable Treatment of Class Members

The final Rule 23(e)(2) factor turns on whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D), 2018 Advisory Comm. Notes.

The Settlement Agreement requires notice to be provided to all members of the Settlement Class, based upon whether the class member has already been released from ICE custody. Thus, the Settlement Agreement treats all members of the Settlement Class equitably.

Accordingly, the Court concludes that all four factors under Rule 23(e)(2) favor granting final approval of the Settlement Agreement.

-16-

### 2.    The Ninth Circuit's *Churchill* Factors

The Court now turns to the eight *Churchill* factors that the Ninth Circuit uses to evaluate the fairness of a settlement agreement.

#### a.    Strength of Petitioners' Case

"An important consideration in judging the reasonableness of a settlement is the strength of plaintiffs' case on the merits balanced against the amount offered in the settlement." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 488 (E.D. Cal. 2010).  The proposed settlement is "not to be judged against . . . what might have been awarded in a judgment in favor of the class." *Id.*  This factor is generally satisfied when a plaintiff overcame barriers to make his case.  *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).

Here, the Court has presided over eight years of litigation, including two temporary restraining orders, a preliminary injunction, motions to dismiss, summary judgment, and a permanent injunction.  Additionally, the parties arrived at the Settlement Agreement through the services of the Ninth Circuit's mediation program.  Based upon that history, the Court concludes that Petitioners advanced a strong case that would continue to be litigated competently in the absence of the Settlement Agreement.

Accordingly, the Court finds that this factor supports final approval.

#### b.    Risk, Expense, Complexity, and Likely Duration of Further Litigation

The second factor in assessing the fairness of the proposed settlement is the complexity, expense, and likely duration of the lawsuit if the parties had not reached a settlement agreement.  *See Officers for Justice v. Civil Service Com'n of City & County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).  Because this factor closely mirrors the requirement in Rule 23(e) concerning "the costs, risks, and delay of trial and appeal," the Court concludes that it need not

duplicate its analysis.  Fed. R. Civ. P. 23(e)(2)(C)(i); *see also id.*, 2018 Advisory Comm. Notes (noting that many of these factors "focus on comparable considerations").  As discussed above,[49] this factor weighs in favor of granting final approval.

### c.    Risk of Maintaining Class Action Status through Trial

Although the Court preliminarily certified the class, that certification was for settlement purposes only.[50]  An "order that grants or denies class certification may be altered or amended before the final judgment." Fed. R. Civ. P. 23(c)(1)(C).

The Court finds that the risks that Petitioners faced—whether early at the class certification stage, later through dispositive motions, or on appeal at the Ninth Circuit—were substantial.  Since the Court granted class certification, Respondents have not made any efforts to decertify the class.  However, they could raise that issue in the future.  The Settlement Agreement "avoids any such risk and immunizes the class certification from attack" from Respondents. *Lane v. Brown*, 166 F. Supp. 3d 1180 (D. Or. 2016).

Therefore, this factor favors approval.

### d.    Amount Offered in Settlement

The fourth factor in assessing the fairness of the proposed settlement is the amount offered.  "Of course, the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624 (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).  The Ninth Circuit has explained that "the proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* at 625.  Rather, any analysis of a fair

---

[49]    *See supra* § II.C.1.c.i.

[50]    *See* Preliminary Approval Order.

-18-

settlement amount must account for the risks of further litigation and trial, as well as expenses and delays associated with continued litigation.

Here, the Settlement Agreement does not contain any amount that will be distributed to the Settlement Class.  Rather, the Settlement Agreement is entirely injunctive and declaratory relief in the form of notice to Cambodian nationals who are subject to final orders of removal.[51]  Additionally, the Court has already thoroughly discussed the costs and risks associated with further litigation and trial and has concluded the future costs and risks support the final approval of the Settlement Agreement.[52]

> e.      **Extent of Discovery and Stage of Proceedings**

The fifth factor requires the court to gauge whether Petitioners had sufficient information to make an informed decision about the merits of his case.  *See In re Mego*, 213 F.3d 454, 459 (9th Cir. 2000).  The more discovery that has been completed, the more likely it is that the parties have "a clear view of the strengths and weaknesses of their cases."  *Young v. Polo Retail, LLC*, 2007 WL 951821, at *4 (N.D. Cal. Mar. 28, 2007) (internal quotation marks omitted).

Here, the parties engaged in discovery and the full summary judgment motion process.

On balance, the extent of discovery and the stage of the proceedings support the conclusion that the parties had sufficient information to make an informed decision regarding class settlement.

> f.      **Experience and View of Counsel**

The sixth factor that the court considers is the experience of counsel, because "[t]hey are the ones who are most closely acquainted with the facts of the underlying litigation."  *Vasquez*, 266 F.R.D. at 489.  "Parties represented by

---

[51]      *See supra* § II. A.2.

[52]      *See supra* § II. C.1.c.i.

competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). However, while counsel's views are instructive, they do not entitle the plaintiff to a presumption of fairness. *See Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019).

Here, Class Counsel has substantial experience with immigration issues, civil rights actions, and complex class action litigation.[53] Respondents' counsel has extensive experience defending lawsuits raising constitutional and statutory claims related to ICE.[54] Furthermore, the Settlement Agreement was reached "under the guidance of a Ninth Circuit mediator."[55]

Therefore, this factor favors final approval of the Settlement Agreement.

### g.    Presence of a Governmental Participant

Respondents are all governmental entities or individuals, and all are represented by attorneys from either the DOJ or the Office of Immigration Litigation.

Therefore, this factor favors final approval.

### h.    Reaction of the Class Members to the Proposed Settlement

Finally, the court must consider the reaction of the class to the settlement. *See Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003). "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement

---

[53]    Kao Declaration ¶¶ 3–5; Decl. of Sean Commons in Supp. of the Motion for Settlement Approval (the "Commons Declaration") [ECF No. 401-4] ¶¶ 3–5.

[54]    Liggett Declaration ¶ 12.

[55]    Motion for Settlement Approval 2:20–21.

are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004); *see also Arnold v. Fitflop USA, LLC*, 2014 WL 1670133, at *8 (S.D. Cal. Apr. 28, 2014) (concluding that the class members' reaction to the settlement "presents the most compelling argument favoring settlement").

Class members had 80 days to file comments or objections with the Court or to Class Counsel following the Court's Preliminary Approval Order and Order Granting Clarification Stipulation.[56] Class members were able to file objections and any supporting papers with the Court by mail or in person.[57] Any member of the Settlement Class could also submit objections to Class Counsel by mail or in person.[58] The parties have also stated that, as of the time of filing of the instant Motion, "no proper timely or untimely objection has been received to the Settlement Agreement or the requested fees."[59] Through his declaration, Petitioner's counsel, attorney Winifred Kao, does state that she received an objection via email.[60] However, that objection was received weeks after the deadline, and the sender failed to provide any of the information that the Court required for a proper objection.[61] Ms. Kao's office also investigated the username that sent the email to the Class List but did not find a match.[62]

As a result, this factor also favors granting final approval of the Settlement Agreement.

---

[56]    *See* Preliminary Approval Order; Order Granting Clarification Stipulation.

[57]    Class Notice 4–5.

[58]    *Id.* at 5.

[59]    Motion for Settlement Approval 12:16–18.

[60]    Kao Declaration ¶ 17.

[61]    *Id.*

[62]    *Id.*

## D.    Conclusion on Final Settlement Approval

In conclusion, all factors used to assess the adequacy, fairness, and reasonableness of a class settlement—including both the factors prescribed to the Court under Rule 23(e)(2) and the additional Ninth Circuit *Churchill* factors—point in favor of granting final approval of the Settlement Agreement. Therefore, the Court **GRANTS** Petitioners' Motion for Settlement Approval.

### III.  ATTORNEYS' FEES AND COSTS

Under the Settlement Agreement, Respondents have agreed to pay attorneys' fees and costs to Class Counsel in the sum of $500,000.[63]

In the Ninth Circuit, "the fee applicant bears the burden of submitting 'evidence supporting the hours worked and rates claimed.'" *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  The Ninth Circuit has "a 'preference' for contemporaneous records," but it has "never held that they are absolutely necessary." *Id.*  Rather, "fee requests can be based on 'reconstructed records developed by reference to litigation files.'" *Id.* (quoting *Davis v. City & Cnty. of San Francisco*, 976 F.2d 1536, 1542 (9th Cir. 1992), *opinion vacated in part on denial of reh'g*, 984 F.2d 345 (9th Cir. 1993)).

"In a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method" when determining the reasonableness of a request for attorneys' fees. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).  Here, because there is no common fund, the Court will analyze only the lodestar method. *See Greater Los*

---

[63]    Motion for Fees and Costs 1:10–11.

-22-

*Angeles Agency on Deafness, Inc. v. Krikorian Premiere Theatres*, 2015 WL 12656271, at *4 (C.D. Cal. Feb. 5, 2015) ("[S]ince there is no common fund, the Court will utilize the lodestar method to determine the reasonableness of the attorneys' fees.").

Under the lodestar method, the court "multipl[ies] the number of hours the prevailing party reasonably expended on the litigation . . . by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 941. Although the lodestar figure is "presumptively reasonable," the court may adjust it upward or downward reflecting a host of "reasonableness" factors, "including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* at 941-42.

To determine the reasonable rate of attorneys' fees, the court looks to the "relevant market"—here the Central District of California—and not to a specific subject area. *Hope Med. Enters., Inc. v. Fagron Compounding Serv., LLC*, 2022 WL 826903, at *2 (C.D. Cal. Mar. 14, 2022).

Here, Class Counsel allege that they worked approximately 7,600 hours collectively.[64] Specifically, attorneys at the Asian Law Caucus ("ALC") spent over 1,200 hours on this matter,[65] while the attorneys at Sidley Austin LLP spent more than 6,400 hours on this matter.[66] Counsel also testified that if Sidley had billed this matter at Sidley's standard rates, Sidley's fees would have exceeded $4,400,000 in attorney's fees and Sidley would have sought $225,000 in litigation costs.[67] If all attorneys, partners and associates alike, at Sidley and the

---

[64] Kao Declaration ¶¶ 7 & 8; Commons Declaration ¶ 9.

[65] Kao Declaration ¶¶ 7 & 8.

[66] Commons Declaration ¶ 9.

[67] *Id.*

ALC had billed the statutory maximum—$258.46 per hour[68]—the attorneys' fees alone would have been $1,964,296, well in excess of the agreed upon $500,000.  In view of the much higher fees approved by other courts in this District, the Court concludes that the parties' relatively low agreed upon fees and costs are appropriate.  *See, e.g.*, *Hope Med. Enters., Inc., LLC*, 2022 WL 826903, at *3 (approving rates of $895 to $1,295 per hour for partners and counsel, and between $565 and $985 for associates); *Kolay Flooring Int'l, LLC v. Milliken & Co.*, 2019 WL 3059276, at *4 (C.D. Cal. Mar. 6, 2019) (approving rates of $850 to $1,000 per hour); *Williams v. Berryhill*, 2018 WL 6333695, at *2 (C.D. Cal. Nov. 13, 2018) (approving rates exceeding $1,500 per hour); *Coles v. Berryhill*, 2018 WL 3104502, at *3 (C.D. Cal. June 21, 2018) (approving rates of $1,431.94 per hour); *Masimo Corp. v. Tyco Health Care Grp., L.P.*, 2007 WL 5279897, at *7 (C.D. Cal. Nov. 5, 2007) (approving rates of $900 to $1,000 per hour).

Accordingly, the Court **GRANTS** Class Counsel's request for $500,000 in attorneys' fees and costs.

### IV.  DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1.      Final approval of the Motion for Settlement Approval [ECF No. 401] is **GRANTED**.

2.      Petitioners' Motion for Fees and Costs [ECF No. 402] for attorneys' fees and costs in the amount of $500,000 is **GRANTED**.

---

[68]      https://www.ca9.uscourts.gov/attorneys/statutory-maximum-rates/ (citing Equal Access to Justice Act, 28 U.S.C. § 2412(d)(2)(A); *Thangaraja v. Gonzales*, 428 F.3d 870, 876–77 (9th Cir. 2005); Ninth Circuit L.R. 39-1.6).

3.    Judgment will issue accordingly.

**IT IS SO ORDERED.**

Dated:___April 27, 2026___

_____
John W. Holcomb
UNITED STATES DISTRICT JUDGE

-25-